IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES ) | |
| ) | Case No. 3:25-mj-02140 |
| v. ) | Magistrate Judge Holmes |
| ) | |
| ESPERANZA DE LA PAZ HERNANDEZ ) | |
| DE LONES ) | |

**O R D E R**

A preliminary hearing was held in this case on April 21, 2025. The defendant Esperanza de la Paz Hernandez de Lones appeared with counsel, Assistant Federal Public Defender Caryll Alpert, and with the assistance of an interpreter. Assistant U.S. Attorney Rachel Stephens appeared for the United States. Ms. Hernandez, through counsel, stated that she intended to waive an immediate detention hearing with reservation to request a later hearing. Ms. Hernandez having waived her right to an immediate detention hearing, and upon the Court's finding of probable cause, as discussed herein, the government's motion for detention (Docket No. 3) is **CONDITIONALLY GRANTED** as provided for below.

### I. Background and Procedural History

Ms. Hernandez is charged in a criminal complaint, filed on April 11, 2025, with illegal reentry into the United States by a previously deported felon in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). (Docket No. 1.) The government moved for a detention hearing and for the detention of Ms. Hernandez pending trial. (Docket No. 3.) As noted above, Ms. Hernandez, at the preliminary hearing, waived her right to an immediate detention hearing, subject to a finding of probable cause, and with reservation of the right to request a later hearing.

In support of probable cause, the government presented the testimony of ICE deportation officer Michael Hector.[1] Officer Hector testified that, according to a lead from a partner law enforcement agency[2] on or about April 9 or 10, 2025, Ms. Hernandez, who was identified as being in the United States illegally, purchased a plane ticket in Nashville and was traveling to Miami.[3] Officer Hector testified that, after investigating Ms. Hernandez's citizenship status by reviewing U.S. State Department and USCIS records[4], and determining that she is a citizen from El Salvador, who was previously removed from the United States and does not have a pending application to be in or pass through the United States legally, he and other law enforcement officers apprehended Ms. Hernandez on April 11, 2025, at the Nashville International Airport ("BNA"), after she had cleared TSA security.

At the preliminary hearing, Ms. Hernandez raised the issue that the government failed to establish probable cause because there was no evidence that she was voluntarily in the United States. To allow the parties an opportunity to brief this question, which they have now done, *see* Docket Nos. 14 and 15, the Court took the matter of probable cause under advisement. The Court has reviewed the parties' filings. For the reasons discussed in more detail below, the Court finds probable cause for the offense charged in this case.

---

[1] At the preliminary hearing, Officer Hector identified himself as an ICE deportation officer. In the complaint, he describes himself as "an agent with the Department of Homeland Security (DHS), specifically, U.S. Immigration and Enforcement (ICE), Enforcement Removal Operations." (Docket No. 3 at ¶ 1.)

[2] According to Officer Hector's later testimony, this law enforcement agency appears to be the U.S. Department of Homeland Security.

[3] See discussion below regarding complete circumstances of Ms. Hernandez's booked travel.

[4] No copies of any such records were offered into evidence at the preliminary hearing, although some records were provided to defense counsel.

2

## II. Legal Standards and Analysis

For purposes of a preliminary hearing, the Court must determine whether there is probable cause to support the offense alleged in the complaint. After hearing the government's proof in support of a complaint, the Court has two options. If the Court finds probable cause to believe that the charged offense was committed and that the defendant committed the offense, the Court must, under Fed. R. Crim. P. 5.1(e), require the defendant to appear for further proceedings. If, however, the Court finds no probable cause that the offense alleged in the complaint was committed or no probable cause that the defendant committed the offense, the Court must, under Fed. R. Crim. P. 5.1(f), dismiss the complaint and discharge the defendant.

"Probable cause" is not defined either by statute or the rules of criminal procedure. Some courts have described probable cause as "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *United States v. Infante*, 782 F.Supp.2d 815, 817-18 (D. Ariz. 2010) (citations omitted); *see also United States v. Spencer*, No. 2:13-mj-129, 2013 WL 2417976, at *1 (S.D. Ohio June 3, 2013) (same). The Supreme Court has noted that "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules. *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

"Contrary to what its name might seem to suggest, probable cause demands even less than probability." *United States v. Rodriquez*, 460 F.Supp.2d 902, 906 (S.D. Ind. 2006) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)). Probable cause does, however, require more than bare suspicion. *Id*. Ultimately, the probable cause quantum is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the

3

Case 3:25-cr-00102    Document 16    Filed 05/06/25    Page 3 of 11 PageID #: 79

totality of the circumstances. A probable cause determination generally requires a practical, common-sense assessment of the involved facts based on the totality of the circumstances. *Gates*, 462 U.S. at 238. Put simply, probable cause may be based on a fair probability, from the totality of the circumstances, that the defendant committed the offense charged. *Id*. This "fair probability" is the kind on which "reasonable and prudent people, not legal technicians, act." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (quoting *Gates*, 462 U.S. at 238, 231)) (internal brackets omitted). Moreover, probable cause is a relatively low bar for the government. *Kaley v. United States*, 571 U.S. 320, 338 (2014) ("Probable cause, we have often told litigants, is not a high bar[.]")

The finding of probable cause may be based upon hearsay evidence in whole or in part. Fed. R. Crim. P. 5.1(e) advisory committee's note to 2002 amendment; Fed. R. Evid. 1101(d)(3). The evidence is viewed in the light most favorable to the government, *Gates*, 462 U.S. at 237 n.10, including that "all reasonable inferences must be drawn in favor of the prosecution at a preliminary hearing." *Spencer*, 2013 WL 2417976, at *1 (internal quotation omitted).

The question posed by Ms. Hernandez is "whether the defendant's presence in the United States must be voluntary." (Docket No. 15 at 1.) Ms. Hernandez maintains the answer to that question is yes. She further argues that, because the government did not present evidence "on the circumstances of her arrival in the United States, or placing her, at any point, at a location other than the airport security area headed to El Salvador" (*id*. at 5), which Ms. Hernandez contends "is the functional equivalent of a border or port location" (*id*.), the government failed to establish probable cause.

Not surprisingly, the government contends that "[v]oluntariness is not an element of the offense which must be established by the United States." (Docket No. 14 at 2.) The government further maintains that "[t]he Court can presume that the defendant acted willfully and knowingly

4

to enter this country, particularly since she was walking around freely within the Nashville airport, on her way to Miami, according to her airline ticket." (Id. at 3.)[5]

By the barest possible circumstances, the Court finds there is a fair probability that Ms. Hernandez illegally reentered the United States after a prior removal, which establishes probable cause, both that the charged offense was committed, and that Ms. Hernandez committed the offense. According to the language of the statute, the elements of the crime of illegal reentry in violation of 8 U.S.C. § 1326(a), as charged in the complaint[6] are: "(1) the defendant is an alien[7]; (2) who previously was arrested and deported or excluded and deported; and (3) thereafter improperly entered, or attempted to enter, the United States (without the permission of the Attorney General)." *United States v. Hodulik*, 44 Fed. App'x. 656, 660 (6th Cir. 2002) (citing *United States v. Meza-Soria*, 935 F.2d 166, 168 (9th Cir. 1991)). To be sure, this is not, as discussed in more detail below, a case in which the evidence presented by the government overwhelmingly establishes probable cause. To the contrary, this is a close call. Nevertheless, the Court is not convinced that the basis articulated by Ms. Hernandez negates probable cause.

Ms. Hernandez argues that to establish probable cause, the government must show that her presence in the United States was voluntary, which she contends the government failed to do. Put

---

[5] See discussion below regarding the government's contention and presentation of testimony about Ms. Hernandez's booked travel.

[6] The complaint also alleges that Ms. Hernandez's prior removal followed her conviction of an aggravated felony for purposes of 8 U.S.C. § 1326(b)(2). The extent to which § 1326(b)(2) constitutes an element of the crime of illegal reentry that must be charged in the indictment and proven beyond a reasonable doubt or is simply a sentencing factor is the subject of some debate. *See e.g. United States v. Vasquez-Duarte*, 59 Fed. App'x. 625, 629-30 (6th Cir. 2003). For purposes of the instant probable cause determination, the Court finds it unnecessary to address this question.

[7] Because the language of the statute refers to the subject individual as an "alien," the Court uses this same reference when discussing the statute.

another way, Ms. Hernandez asserts that voluntariness is an essential element of illegal reentry for which the government must show probable cause.

Ms. Hernandez and the government agree that the Sixth Circuit has not directly addressed whether voluntariness of the return is an element of the crime of illegal reentry. Because there is, as discussed in more detail below, sufficient evidence from which the Court can reasonably infer that Ms. Hernandez was intentionally in the United States in the very limited § 1326 sense, the Court finds it unnecessary to further address whether voluntariness is an element of the crime of illegal reentry. *See also Blackwell v. Nocerini*, 123 F.4th 479, 489 (6th Cir. 2024) ("To initiate a prosecution, the government does not need the same proof for every element of a crime as it would need to get a conviction at trial. *See Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021). Rather, the government must identify only a "probability or substantial chance" that the defendant committed the crime. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1164 (6th Cir. 2021).").

Many courts have suggested that intention (or voluntariness) of reentry into the United States can be reasonably inferred from the circumstances of the individual's location. A number of those courts have also suggested that an individual's presence at a border or port location might be enough to dispel the inference of intentionality (or voluntariness). *See e.g. United States v. Flores-Velasquez*, 651 F. App'x 861, 867 (11th Cir. 2016) (jury could find from the circumstances of the defendant's arrest, including that it occurred in a residential area in Florida that was not a port, and in the absence of any other circumstances, that the defendant voluntarily reentered the country); *United States v. Sierra-Ledesma*, 645 F.3d 1213, 1214 (10th Cir. 2011) ("Defendant was found in Kansas, a considerable distance from the United States-Mexico border, giving rise to the reasonable inference that he intended to renter the United States."); *United States v. Guzman-Ocampo*, 236 F.3d 233, 238 (4th Cir. 2000) ("Distance from the border, in most cases, will be

6

sufficient evidence to allow the jury to draw the inference that that presence was voluntary."); *United States v. Quintana-Torres*, 235 F.3d 1197, 1200 (9th Cir. 2000) ("[A] reasonable juror may well infer that the [immigrant] had the intention to be here when the [immigrant] is discovered at any location other than the border."). As noted by the Ninth Circuit, the inference that an individual is intentionally (or voluntarily) in the United States for purposes of § 1326 is "not a presumption of law. It is circumstantial proof that is convincing unless explained away." *Quintana-Torres*, 235 F.3d at 1200.

Juxtaposed against the reasoning of these cases is the principle, recognized by federal courts since 1908, that "entering" the United States requires more than physical presence in the country. *United States v. Pacheco-Medina*, 212 F.3d 1162, 1163-64 (9th Cir. 2000) (*citing Ex Parte Chow Chok*, 161 F. 627, 628-29 (N.D. N.Y.), *aff'd*, 163 F. 1021 (2d Cir. 1908) and *Rosenberg v. Fleuti*, 374 U.S. 449, 453 (1963) (pointing out that "[t]he definition of 'entry' as applied for various purposes in our immigration laws was evolved judicially")). Individuals do not "have to be in the physical custody of the authorities to be officially restrained: rather, the concept of official restraint is interpreted broadly." *United States v. Hernandez-Herrera*, 273 F.3d 1213, 1219 (9th Cir. 2001) (quoting *United States v. Ruiz-Lopez*, 234 F.3d 445, 448 (9th Cir. 2000)). "[T]he restraint may take the form of surveillance, unbeknownst to the [immigrant]." *Id*. If, however, an individual "is not discovered until some time after exercising [her] free will within the United States, [she] has entered free from official restraint." *Id*. (citing *United States v. Martin-Plascencia*, 532 F.2d 1316, 1317 (9th Cir. 1976)).

Ms. Hernandez argues that being at BNA about to board a plane with a ticket to El Salvador is the "functional equivalent of a border or port location" (Docket No. 15 at 5) and, in the absence of any evidence by the government of her "arrival in the United States, or placing her, at any point,

in a location other than the airport security area headed to El Salvador" (*id*.), there can be no finding of probable cause. There is some appeal to Ms. Hernandez's argument. The government cannot deny that Ms. Hernandez was booked on a flight to El Salvador or that she intended to travel all the way there. The government cannot deny this because ICE elected to arrest Ms. Hernandez in Nashville rather than waiting to see if she boarded the flight to El Salvador from Miami. However, the Court cannot find that circumstance alone dispels the inference of intentionality (or voluntariness). More broadly, the Court cannot, without more, find that Ms. Hernandez's location at BNA is the functional equivalent of a border or port location.

Rather, the Court finds that the government's evidence identifies, by the narrowest of showings, a sufficient probability that Ms. Hernandez illegally reentered the United States after a prior removal. In doing so, however, the Court is also obliged to note the government's apparent effort to take further advantage of the probable cause construction already in the government's favor by not providing complete information during the preliminary hearing

Specifically, Officer Hector testified that based on a tip from another law enforcement agency – which appears to have been Homeland Security Investigations – Ms. Hernandez was traveling from Nashville to Miami. Officer Hector did not clarify in his direct testimony that Ms. Hernandez was booked on a flight to El Salvador. This additional information was elicited on cross examination. That Ms. Hernandez was traveling to El Salvador does not, ultimately, change the outcome of probable cause here. Nevertheless, the Court is concerned that Officer Hector did not tell the whole truth, as he took an oath to do. This causes the Court to question Officer Hector's credibility and about what other information he may not have been entirely truthful, including, especially, about his knowledge of whether Ms. Hernandez may have been under surveillance and

therefore under "official restraint" during her time in the United States.[8] Officer Hector was asked several questions on cross examination about any evidence of the circumstances of Ms. Hernandez's return to or arrival in the United States or any other information at all about what she was doing here, to all of which he responded that he had no knowledge.

Ms. Hernandez was arrested after she cleared TSA security at BNA, the only reasonable explanation for which is that she was in the airport at large and, which suggests that she may also have been in the Nashville community, as there appears to have been at least one or two days between when she was identified by ICE and when she was arrested. Given Officer Hector's testimony of a tip by another law enforcement agency identifying Ms. Hernandez as in the country illegally and having purchased a plane ticket in Nashville, there may be some question whether Ms. Hernandez was under surveillance, and therefore free from official restraint, during whatever time she was in the United States. Officer Hector also testified that he knew no other circumstances of Ms. Hernandez's presence in the United States, including when, where, or why she entered the country. Given Officer Hector's clear attempt to skirt the entire truth about Ms. Hernandez's booked travel, the Court, at best, questions whether Officer Hector may, in fact, know more than he testified to.[9] But this requires supposition that is inapposite to the standards for consideration of probable cause.

---

[8] Notwithstanding Officer Hector's failure to tell the whole truth about Ms. Hernandez's booked travel when first asked, the Court does not, under the sum of the evidence presented, find his entire testimony to be untruthful.

[9] Officer Hector was not specifically asked whether Ms. Hernandez was under surveillance when she returned to the United States. Nevertheless, defense counsel's questions about Officer Hector's knowledge of Ms. Hernandez's circumstances and "any information at all about what she was doing in the United States," *see* Transcript of Hearing (Docket No. 13) at p. 20, lines 23-25, are certainly enough to have elicited a disclosure by Officer Hector of any awareness on his part of surveillance of Ms. Hernandez.

In determining probable cause, the Court must consider the totality of the circumstances. *See Gates*, 462 U.S. at 230 and 237 n.10; *see also United States v. LaPradd*, 480 F. App'x. 405, 409 (6th Cir. 2012); *United States v. Stewart*, 315 F. App'x. 554, 558 (6th Cir. 2009); *United States v. Caldwell,* 221 F.3d 1336 (Table), No. 99-5088, 2000 WL 875694, at *3 (6th Cir. June 19, 2000). Because it appears Ms. Hernandez has a prior history of convictions for illegal reentry, *see* Case No. 3:16-cr-00215-1[10], the Court finds there is an independent basis for Officer Hector's testimony about the defendant's status. The Court further finds that the totality of the circumstances support a sufficient probability, and therefore probable cause, that Ms. Hernandez illegally reentered the United States after a prior removal.

Despite finding probable cause, the Court does however note the anomaly of charging Ms. Hernandez for being found in the United States when she was undisputedly attempting to leave this country.[11] As observed by the Second Circuit, this prosecution and, if convicted, punishment, creates a "disincentive for undocumented, previously-deported [individuals] to do the one that Congress would most like them to do – leave." *United States v. Macias*, 740 F.3d 96, 101 (2d Circ. 2014).

Based on the probable cause finding, the Court proceeds to the question of whether Ms. Hernandez is properly released or detained pending trial. By and through counsel, Ms. Hernandez

---

[10] Common sense suggests that the defendant in Case No. 3:16-cr-00215-1 and Ms. Hernandez are the same person. The names, including the "aka" are identical. Further, the filings in Case No. 3:16-cr-00215-1, specifically Docket No. 20 in that case, refer to that defendant's country of origin as El Salvador, which is where Ms. Hernandez is from. Ms. Hernandez also appears to have been charged with illegal reentry after deportation following an aggravated felony in a 2002 indictment, in Case No. 3:02-cr-00217-1. Because that case predates CM/ECF, the Court is unable to view any of the filings. However, the Court notes that the name of the defendant in Case No. 3:02-cr-00217 is the same as Ms. Hernandez's, somewhat unusual, full name.

[11] As noted above, there can be no supportable dispute by the government that Ms. Hernandez was attempting to leave the country based on her booked ticket to El Salvador.

waived her rights to an immediate detention hearing, reserving the right to later request a detention hearing.[12] The government's motion for detention (Docket No. 3) is therefore conditionally granted without prejudice and with leave for Ms. Hernandez to later move for a detention hearing.

### III. Directions Regarding Detention

The defendant, Esperanza de la Paz Hernandez de Lones, having knowingly waived her right to an immediate detention hearing at this time, the Court accepts the waiver with the defendant's reservation of her right to request a later hearing, and it is therefore **ORDERED** that the defendant is committed to the custody of the United States Attorney General or her designee for confinement in a corrections facility pending disposition of the charges filed against her, and she shall be held separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purposes of an appearance in connection with a court proceeding.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

---

[12] Because Ms. Hernandez waived her right to an immediate detention hearing, the Court makes no findings at this time about any detention issues. All issues, including the question of whether this is a detention-eligible case, *see* 18 U.S.C. § 3142(f) and *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441, at *2-12 (M.D. Tenn. May 27, 2021), are reserved.